UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMERICAN HOME SHIELD OF TEXAS, | § § | |
|     Plaintiff and Counter-Defendant, | § § § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-0808 |
| | § | |
| STATE OF TEXAS, | § | |
|     Defendant, Counter-Plaintiff, and Third-Party Plaintiff, | § § § § | |
| | § | |
| v. | § § | |
| THE SERVICE MASTER COMPANY and AMERICAN HOME SHIELD CORPORATION, | § § § § | |
|     Third-Party Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is the State of Texas' ("the State's") Motion to Remand [Doc. # 5] ("Motion"). American Home Shield of Texas, Inc. ("AHS-TX"), The ServiceMaster Company ("ServiceMaster"), and American Home Shield Corporation ("AHS Corp.") (collectively, "AHS") filed a Response [Doc. # 7], to which the State filed a Reply [Doc. # 8].[1] The Motion is fully briefed and ripe for

---

[1] AHS also filed an Opposed Motion for Leave to Supplement the Record [Doc. # 9] with the Memorandum Opinion approving the settlement agreement in *Faught v. American Home Shield Corporation*, 07-CV-1928, a case filed in the Northen District of

decision. After considering the parties' submissions, applicable legal authorities, and all pertinent matters of record, the Court **grants** the Motion for Remand.

## I.     FACTUAL BACKGROUND

AHS-TX is a provider of "residential service contracts," or "home warranty contracts," in Texas. "A residential service contract obliges AHS-TX, in exchange for a fee, to arrange for service technicians to provide repair and replacement services for covered home systems and appliances under circumstances explained in the customer's contract."[2] The State, acting through the Consumer Protection Division of the Texas Attorney General's Office, commenced an investigation of AHS-TX's practices in 2003. In 2006, AHS-TX filed the instant suit in Harris County court, Cause No. 2006-21887, to quash a Civil Investigative Demand issued by the State. The State filed counterclaim**s** against AHS-TX, and also filed third-party claims against AHS Corp. and its parent company, ServiceMaster. The State alleged that AHS's practices with regard to its service contracts violate various provisions of the

---

       Alabama. The Court **grants** the Motion for Leave, but, for reasons stated below, does not consider the *Faught* Memorandum Opinion to be controlling of the issues presented in the State's Motion to Remand.

[2]     Response, at 3.

Texas Deceptive Trade Practices-Consumer Protection Act., TEX. BUS. & COM. CODE §17.41 *et seq.* ("DTPA").[3]

The State alleges unlawful conduct by AHS, such as payments of commissions or "kickbacks" to real estate brokers for promoting and selling AHS's service contracts.[4] The State also alleges that AHS made various misrepresentations about the quality of its service contracts and engaged in deceptive practices in denying consumers' claims for repairs and replacements under the contracts.[5] The State's live pleading in the instant case, which has not been amended since February, 2007, does not raise any claims under federal statutes including the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607 ("RESPA"), which makes it unlawful for any person to give or accept "any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." *Id.* It is undisputed that the State's Third Amended

---

[3] *See, e.g.*, State of Texas' Third Amended Original Counterclaim and Petition and Application for Permanent Injunction [Doc. # 1-30] ("Third Amended Counterclaim").

[4] *Id.*, ¶ 10.2.

[5] *See generally, id.*, ¶¶ 10-11.

Complaint and Third Amended Original Counterclaim and Petition and Application for Permanent Injunction asserts only DTPA claims under Texas law.[6]

During the pendency of this action, two federal, nationwide class actions were filed against AHS in the Northen District of Alabama: *Faught v. American Home Shield Corp.*, 07-CV-1928, and *Rudd v. American Home Shield*, CV-09-1018. *Rudd* includes an allegation based on the payment of referral fees or "kickbacks" that is similar to the one asserted by the State here. The *Rudd* plaintiffs assert this claim under RESPA.

In October 2009, the *Faught* court granted preliminary approval of a class settlement. The State filed objections to the proposed *Faught* settlement. Specifically, in February, 8, 2010, the State filed a Special Appearance, Preliminary Objections to Class Settlement, and Notice of Intent to Appear at Fairness Hearing [Doc. # 1-28] ("Special Appearance"). On March 8, 2010, the State filed an *Amicus Curiae* Brief of the Texas Attorney General Opposing Proposed Class Settlement [Doc. # 95] ("*Amicus Curiae* Brief"). The State also appeared and presented oral argument at the *Faught* Fairness Hearing on March 10, 2010. *See* Fairness Hearing Transcript, Exh. B to Reply [Docs. # 8-2, # 8-3].

---

[6]  *See generally,* Third Amended Counterclaim.

During the *Faught* settlement proceedings, the State briefed and discussed its objections to the settlement, which it characterizes as a "grossly unfair 'sweetheart deal.'"[7] In making this point, the State argued that the proposed settlement appeared to preclude Texas residents from participating in any *Rudd* settlement[8] and also from receiving restitution from the instant DTPA enforcement action.[9] The State argued, *inter alia*, that the *Faught* court should abstain from enforcing the settlement against Texas residents out of deference to the State's DTPA action then pending in Harris County court.

The day following the Fairness Hearing, on March 11, 2010, AHS removed the instant case to federal court. AHS contends that, during the *Faught* settlement proceedings, the State argued for the first time that its DTPA suit against AHS also included claims under RESPA, thus giving rise to federal question jurisdiction and making this case removable. Subsequently, on March 17, 2010, AHS filed a letter brief with the *Faught* court arguing that none of the State's abstention theories applied to that case, and in any event, the State's case had been removed to federal court.[10]

---

[7] Motion, at 3.

[8] The State described *Rudd* as a case with "drop-dead liability and substantial damages." Special Appearance, at 6.

[9] *See, e.g.*, *id.,* at 5-6.

[10] Letter Brief, Exh. I to Response.

The State then moved to remand this case to state court on April 9, 2010. On April 27, 2010, the *Faught* court approved the settlement, rejecting all of Texas' objections. In rejecting the State's abstention contentions, the Alabama court noted that the instant case had been removed from Harris County court to the Southern District of Texas, and that the abstention issue was therefore moot.[11]

The Court now remands the case to Harris County court.

## II.  REMOVAL STANDARD

"'Federal courts are courts of limited jurisdiction.'"  *Rasul v. Bush*, 542 U.S. 466, 489 (2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 337 (5th Cir. 2004); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  "'They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.'"  *Rasul*, 542 U.S. at 489 (quoting *Kokkonen*, 511 U.S. at 377 (citations omitted)).  The court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Bourne v. Wal-Mart Stores, Inc.*, 582 F. Supp. 2d 828,

---

[11]  *See* Memorandum Opinion, *Faught v. American Home Shield Corporation*, 07-CV-1928, Exh. A to Opposed Motion for Leave to Supplement Record [Doc. # 9-1], at 29. The State argues that AHS's removal of the case was "blatant gamesmanship"— an improper effort to moot the abstention issue. *See* Motion, at 6, 10-11. AHS denies this allegation, and points out that it fully briefed its argument that abstention would not apply even if the case had not been removed. Response, at 10-11.

832 (E.D. Tex. 2008) (quoting *Howery*, 243 F.3d at 916 (citing *Kokkonen*, 511 U.S. at 377)); *see also Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005)).

In the absence of diversity jurisdiction, federal-question jurisdiction is required for removal. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Congress allows for removal of a case from state court to federal court when a plaintiff's complaint alleges a claim "arising under" federal law. 28 U.S.C. § 1441; *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).

A case with only state law claims may arise under federal law "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9 (1983); *see Empire HealthChoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (holding that a case arises under federal law if a well-pleaded complaint establishes that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law); *In re Carter*, 618 F.2d 1093, 1100 (5th Cir. 1980) ("For a case to 'arise under' . . . federal law, a right or immunity created by [the law] 'must be an element, and an essential one, of the plaintiff's cause of action. . . . [That] right or immunity must be such that it will be

supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another.'" (quoting *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 112 (1936))).  However, for a district court to exercise federal-question removal jurisdiction on this basis, the plaintiff's claim must "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfr.*, 545 U.S. 308, 314 (2005).

Generally, "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392.  Under the well-pleaded complaint rule, the plaintiff is the master of the claim and may avoid federal jurisdiction by exclusively relying on state law, even where a federal claim is also available.  *Id.*  Moreover, a case may not be removed to federal court on the basis of a federal defense, "even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 393; *see Hoskins v. Bekins Van Lines*, 343 F.3d 769, 772 (5th Cir. 2003) (same).

### III.  ANALYSIS

AHS's stated basis for removing this case is that it "arises under the Constitution, law or treaties of the United States."[12] *See* 28 U.S.C. § 1331. As noted, however, it is undisputed that the State's pleading, in of itself, alleges no claims under federal law. Under 28 U.S.C. § 1446(b), where an initial pleading is not removable, "a notice of removal may be filed within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion order or *other paper* from which it may first be ascertained that the case is one which is or has become removable . . . ." *Id.* (emphasis added); *Addo v. Globe Life & Accident Ins. Co.*, 230 F.3d 759, 762 (5th Cir. 2000). "Under limited circumstances, courts have looked to 'other paper[s]' to establish federal question jurisdiction, such as to clarify that a plaintiff's state law claim is one that would be preempted by federal law." *Eggert v. Britton*, 223 F. App'x 394, 397 (2007) (citing *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 468-69 (6th Cir. 2002)). To establish federal question jurisdiction, the other paper "must clarify the federal nature of an existing claim, and not relate to a putative claim that has not yet been pled." *O'Keefe v. State Farm Fire & Cas. Co.*, 2009 WL 95039, at *3 (S.D. Miss. 2009, Jan. 13, 2009) (citing *Eggert*, 223 F. App'x at 397; *Trotter v. Steadman Motors, Inc.*, 47 F.Supp.2d 791, 792 (S.D. Miss. 1999) (where "allegations which are said to form the basis of a federal claim which, in turn, forms the basis for removal,

---

[12] Notice of Removal [Doc. # 1], at 1-2.

do not appear anywhere in the pleadings . . . the putative federal claim simply does not exist as a cognizable claim in the case")).

AHS argues that the State's filings and oral arguments in the *Faught* settlement proceeding constitute an "other paper," and that through such other paper, the State unequivocally represented that it is here asserting claims under RESPA or, in the alternative, that RESPA is a substantial and embedded issue in the instant DTPA claims. The Court addresses each of AHS's contentions in turn.

### A. The Assertion of RESPA Claims in this Case

AHS points to several statements made by the State during the *Faught* settlement proceedings that AHS argues establish that the State is asserting RESPA claims in this case. In its Special Appearance, the State noted that the Texas Attorney General has filed a case asserting all of the claims in the *Rudd* case.[13] The State's *Amicus Curiae* Brief has a section entitled "RESPA Violations/Breach of Fiduciary Duties/Commercial Bribery."[14] The same Brief argued that the *Faught* court should abstain from approving the settlement as to Texas consumers because the instant case presents unique issues of state law such as: "whether the State can seek through DTPA disgorgement, a fee that was illegally paid to the consumers' real-estate

---

[13] Special Appearance, at 6.

[14] Amicus Curiae Brief, at 9-11.

brokers—constituting a violation of the brokers' fiduciary duties to their clients, violating a felony statute (commercial bribery), and violating the Federal RESPA statute.[15] In the same context, the State argued that "[t]he Texas judge will also be deciding whether a [Texas Real Estate Commission] administrative statute conflicts with the Federal RESPA statute, prohibiting payments to the brokers."[16] Finally, during the Fairness Hearing, counsel for the State, the Assistant Attorney General, made several statements regarding RESPA claims in relation to the state suit. Specifically, AHS points to the following statement by the Assistant Attorney General:

> The two documents that were filed, the letters from the [Texas] Real Estate Commission, saying basically that we think American Home Shield hasn't committed a violation of the state—or the appropriate administrative law statute under [the Texas Real Estate Commission], they both refer to *RESPA claims, which although they are a part of our case in Texas, they are not a part of this case here.* So I don't think those are relevant at all to what we're here for today.[17]

AHS also notes the following colloquy between the Assistant Attorney General Pat Tulinski and the Court:

> TULINSKI: Well, Your Honor, I have to parse that carefully because there have been issues in this case. For

---

[15] *Id.* at 27.

[16] *Id.*

[17] *Faught* Fairness Hearing Transcript, at 139 (emphasis added).

|               |                                                                                                                                                                                                                                     |
| ------------- | ----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|               | instance, our issues is with respect to the brokers accepting these payments; that [the Texas Real Estate Commission] may not be fully on board with our position about whether that's a *RESPA violation*. |
| THE COURT:    | Right. Well, that's not this case. That's another case that I have. But maybe you'll beat me to the punch on that case.                                                                                                              |
| TULINSKI:     | But what [the Texas Real Estate Commission] has said is as far as this settlement —                                                                                                                                                 |
| THE COURT:    | Right. And that's all I'm talking about is this settlement. So far as I know, this Court didn't authorize any communication with you about *the RESPA case.*                                                                        |
| TULINSKI:     | *Right, except that it's a part of our current litigation.*[18]                                                                                                                                                                      |

Based on the foregoing statements, AHS argues that this case is removable because the State is asserting claims under RESPA.

The State counters that it is not now, nor has it ever asserted a RESPA claim against AHS.[19] It further states that it is not relying on RESPA to support violations of the DTPA.[20]

---

[18]     *Id.* at 143-44 (emphasis added).

[19]     Motion, at 5.

[20]     *Id.* at 8. In determining that there is no federal jurisdiction over this case, the Court relies on the State's argument that it is not asserting RESPA claims *per se* and that it is not relying on RESPA to support its DTPA claims.

AHS has not met its burden to establish that the State is actually asserting claims under RESPA in the case at bar.[21]  Significantly, there is no dispute that the State's pleading, which has not been amended for more than three years, does not assert a RESPA claim.  *See Eggert*, 223 F. App'x at 398 (a plaintiff's response to an interrogatory claiming that his rights under the United States Constitution had been violated did not establish federal question jurisdiction when the constitutional claims did not appear in the pleadings and the response did not clarify the possible federal nature of the state claims that did appear in the pleadings); *Trotter*, 47 F.Supp.2d at 792 (a plaintiff's alleged deposition testimony that the plaintiff was asserting a federal claim was insufficient to establish jurisdiction when the putative federal claim had not been pled and the testimony did not tend to clarify the federal nature of an existing claim).

---

[21]   As an initial matter, it is far from clear that the briefing and statements made in a *different case* can constitute an other paper for purposes of 28 U.S.C. § 1446(b) and thus provide a basis for removing this case.  *See Willis v. Life Ins. Co. of Georgia*, 2002 WL 32397242, at *2 (N.D. Miss. 2002, Apr. 24, 2002) (expressing "serious reservations" as to whether a letter generated from litigation in a separate case could constitute an "other paper") (citing *Growth Realty Companies v. Burnac Mortg. Investors, Ltd.*, 474 F.Supp. 991, 996 (D.P.R. 1979) ("The phrase 'other paper' ... cannot refer to pleadings filed in a separate, distinct case in which the parties are not the same and which has not been consolidated as allowed by local laws of civil procedure with the case at the bar.").  Nevertheless, because the Court reaches the question of whether the State's briefing and statements in *Faught* are sufficient to establish federal jurisdiction, it need not decide whether the State's comments in the Alabama action constitute an "other paper" for § 1446(b) purposes in the first place.

Moreover, the State's briefing and statements in *Faught* make clear that its claims against AHS in this case are brought under the DTPA. *See, e.g.*, Special Appearance, at 1-2 ("The State of Texas, through the Consumer & Protection & Public Health Division of the Office of the Texas Attorney General, sued [AHS] in Texas State Court alleging numerous violations of the *Texas Deceptive Trade Practices Act*." (emphasis added)); *Amicus Curiae* Brief, at 1 ("The State of Texas, through the . . . Texas Attorney General, is currently in litigation with [AHS] in Texas State Court alleging numerous violations of the *Texas Deceptive Trade Practices Act*." (emphasis added)); *Faught* Fairness Hearing Transcript, at 146-47 ("And then one thing I want to bring to the Court's attention is the State's enforcement action, under the DTPA against [AHS], it's uniquely—and I hesitate to use the word strong, but it's—our portion of the DTPA that the state sues under, is much less onerous than a private plaintiff would have.").

In this context, the scant and ambiguous references to RESPA culled by AHS from forty-seven pages of briefing and a 170 page transcript of the Fairness Hearing in *Faught,* a lawsuit separate and unrelated to the case at bar, are insufficient to establish that the State is asserting RESPA claims in *this* suit. Though a section of the State's *Amicus Curiae* Brief is entitled, in part, "RESPA Violations," that section does

not assert that Texas is pursuing RESPA claims in this case.[22] In fact, the State is specific about the scope of its claim; the State expressly states in that section that "[t]he State contends that the existence of the broker payments violates the DTPA."[23] Further, the State's arguments in briefing that it was asserting the same claims as in *Rudd*, as well as the Assistant Attorney General's comments at the Fairness Hearing that the RESPA claims were part of the State's litigation, are ambiguous. As noted, the State alleges in this suit, *inter alia*, that AHS paid kickbacks to real estate brokers. That allegation was not a part of the *Faught* case, but was pled as a violation of RESPA in *Rudd*. Thus, considering the context—a discussion of the potential preclusive effect of a class settlement in *Faught*—it is as likely as not that the State was merely referring to the fact that it is making the same *factual* kickback allegations under the DTPA in this case that the *Rudd* plaintiffs make under RESPA in that case.

The fact that this alleged kickback activity might violate RESPA in addition to the DTPA does not establish federal question jurisdiction. *See Caterpillar*, 482 U.S. at 392 (the plaintiff is the master of his claim and may avoid federal jurisdiction by exclusively relying on state law, even where a federal claim is also available). AHS

---

[22]    See Amicus Curiae Brief, at 7-10.

[23]    *Id.*

has not met its burden of establishing that the State asserts RESPA claims in this case.[24]

### B. RESPA as a Substantial and Embedded Issue in the DTPA Claims

AHS's also contends that this Court has federal question jurisdiction over this case because RESPA is a substantial and embedded component of the State's DTPA claims. This argument is unavailing. As noted, to establish federal jurisdiction on this basis, AHS must show that the State's claims "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable,* 545 U.S. at 314. Under the Fifth Circuit's summary of *Grable*, "federal question jurisdiction exists where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed;

---

[24] AHS also points to the Memorandum Opinion issued by the Northen District of Alabama in *Faught*. *See* Memorandum Opinion, *Faught v. American Home Shield Corporation*, 07-cv-1928, Exh. A to Opposed Motion for Leave to Supplement Record [Doc. # 9-1]. In that opinion, the *Faught* court stated, in dicta, that "[t]he State of Texas is currently litigating Deceptive Trade Practices Act and Real Estate Settlement Procedures Act ("RESPA") claims against AHS." *Id.* at 28. The court also stated in dicta, in holding that the State's abstention arguments were now moot, that "[o]nce it became clear at the Fairness Hearing that Texas was also asserting RESPA claims in its state court lawsuit against AHS, AHS removed the case. . . ." It unlikely that the *Faught* court intended a definitive description of or had the pleadings from the instant case when it made the passing reference to the Texas case. With the benefit of the full record, this Court holds that the State of Texas is not asserting RESPA claims in the instant case.

(3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Singh v. Duane Morris, LLP*, 538 F.3d 334, 338 (5th Cir. 2007) (citing *Grable*, 545 U.S. at 314). AHS has failed to satisfy the first element of the *Singh* test.[25]

AHS again relies on the State's briefing and statements in the *Faught* case in an attempt to establish that RESPA issues necessarily must be resolved in the resolution of the State's DTPA claims. AHS points to a statement in the State's *Amicus Curiae* Brief that payments made by AHS "violate the anti-kickback provisions of section 8 of [RESPA]."[26] AHS also notes the aforementioned statement from the same Brief that "[t]he Texas judge will also be deciding whether a [Texas Real Estate Commission] administrative statute conflicts with the Federal RESPA statute, prohibiting payments to the brokers."[27] AHS argues that because the Texas Real Estate Commission found that AHS's conduct did not violate the Texas Residential Service Company Act ("RSCA"), the State must be relying on RESPA to show that AHS's payments to real estate brokers are illegal.

---

[25] The second element is satisfied because AHS disputes that it violated RESPA's anti-kickback provisions. *See* Response, at 16. The Court does not reach the fourth element.

[26] *Amicus Curiae* Brief, at 9.

[27] *Id.* at 27.

The Court is not persuaded.  The State's claims are brought under the DTPA, not the RSCA.  Accordingly, AHS's argument that the State must be relying on RESPA to show a violation of the law because RSCA is not available is a red herring.  The State is not relying on RSCA in the first place.  Further, in its *Amicus Curiae* Brief, the State expressly sets forth its theory on why the alleged payments at issue directly violate the DTPA.[28]  None of the State's ambiguous statements referenced by AHS, including that the State believes that AHS's conduct violates RESPA, establish anything to the contrary.  There is no indication in either the State's briefing and argument in *Faught*, or in its pleading, that the State predicates its DTPA claims on violations of RESPA.[29]  Thus, in addition to failing to establish that the State is actually bringing RESPA claims in this case, AHS has also failed to show that the State's representations in *Faught* indicate that resolving an issue under RESPA is necessary to resolution of the DTPA claims.[30]  *See Singh*, 538 F.3d at 338.

---

[28]   *Id.* at 10-11.  Specifically, the State alleges that AHS's representations that brokers who receive payments prefer AHS's products violate various provisions of the DTPA. *See id.* & n.9.

[29]   The Court notes again that the State expressly asserts in its Motion that it "is not relying on RESPA to support any violations of the DTPA." Motion, at 8.  The Court relies on this statement in reaching its holding.

[30]   Even if the State's ambiguous statements in *Faught* were sufficient to establish that resolution of an issue under RESPA is necessary to the resolution of the State's DTPA claims, AHS nevertheless fails to establish federal question jurisdiction because it has not shown that any federal interest at issue is substantial. *See Singh*, 538 F.3d at 338.

In sum, AHS has not met its burden of establishing federal jurisdiction over this case because it has not shown either that the State is asserting RESPA claims, or that the State's right to relief under its DTPA claims necessarily depends on the resolution of a substantial question of federal law.[31]

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes it lacks subject matter jurisdiction in this case and the action must be remanded to the 295th Judicial District Court of Harris County, Texas.  It is therefore

---

"Federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.* (quoting *Grable*, 545 U.S. at 313).  Even if resolution of an issue under RESPA would be required in this case, it appears that the state court would merely have to apply RESPA to the State's kickback allegations.  In the case at bar, such a "fact bound and situation-specific" inquiry does not implicate a substantial federal interest.  *See Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700-701 (2006) (declining to find a substantial federal issue in a state claim when the claim was "fact-bound and situation specific"); *Singh*, 538 F.3d at 338 (finding a federal issue to be insubstantial when it was "predominantly one of fact"); *cf. Grable*, 545 U.S. at 315 (finding a substantial federal issue when a state law quiet-title action required the adjudication of the "meaning of a federal tax provision," which "is an important issue of federal law").

[31]   The State moves for sanctions against AHS for removing this case without objectively reasonable grounds.  The State also alleges that counsel for AHS violated Federal Rule of Civil Procedure 11 by signing the Notice of Removal.  *See* Motion, at 10-11. Because the Court finds that removing parties did not lack "objectively reasonable grounds to believe the removal was legally proper," the request for sanctions is **denied**.  *See Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004).

**ORDERED** that the State of Texas' Motion to Remand [Doc. # 5] is **GRANTED** and this case is remanded to the **295th Judicial District Court of Harris County, Texas**, for lack of subject matter jurisdiction. It is further

**ORDERED** that the State of Texas' Motion for Sanctions is **DENIED**.

The Court will issue a separate Order of Remand.

SIGNED at Houston, Texas, this **10th** day of **May, 2010**.

Nancy F. Atlas
United States District Judge